UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALICIA ADDONIZIO,

                    Plaintiff,

-against-

NUVANCE HEALTH AND PUTNAM
HOSPITAL CENTER,

                    Defendants.

No. 23 CV 1582 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Nuvance Health ("Nuvance") and Putnam Hospital Center ("Putnam," together with Nuvance, the "Defendants") move,[1] pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), to dismiss Alicia Addonizio's ("Plaintiff") claims for religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"). Plaintiff opposes Defendants' motion to dismiss.[2] For the following reasons, Defendants' motion to dismiss is GRANTED, and Plaintiff's claims are dismissed with prejudice.

---

[1] (See Notice of Mot. to Dismiss, dated July 19, 2023, [dkt. no. 8]; Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Br."), dated July 19, 2023 [dkt. no. 8-1]; Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Reply"), dated Aug. 18, 2023 [dkt. no. 12].)

[2] (See Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp. Br."), dated Aug. 11, 2023 [dkt. no. 11].)

I.    **Background**

For purposes of this motion, the Court accepts as true all factual allegations in the Complaint and must draw all reasonable inferences in favor of Plaintiff. (<u>See</u> Complaint ("Compl."), dated Feb. 24, 2023 [dkt. no. 1].)

A.  **Factual Background**

Plaintiff is a Christian woman who worked, on and off, as a Patient Care Technician at Putnam between 2001 and October 18, 2021. (<u>Id.</u> ¶¶ 16-18.)  Putnam, a hospital located at 670 Stoneleigh Avenue, Carmel, New York 10512, is part of the Nuvance hospital system, which employs approximately 2,600 physicians and 12,000 ancillary staff within New York and Connecticut. (<u>Id.</u> ¶¶ 12, 14-15.)

On August 26, 2021, the New York Department of Health ("DOH") issued an emergency rule ("Section 2.61"), directing "covered entities," including hospitals, to require "personnel" to become "fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 . . . ."  N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2021).  "Personnel" was defined as "all persons employed or affiliated with a covered entity," including "employees . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients[,] or residents to the disease."  <u>Id.</u> § 2.61(a)(2).

Plaintiff asserts that on or around August 16, 2021, "Defendant"[3] announced a policy that would require "all of its employees" to receive the COVID-19 vaccine no later than October 1, 2021. (Compl. ¶¶ 22-23.) Plaintiff alleges that her closely held religious beliefs do not allow her to receive the COVID-19 vaccine. (Id. ¶ 20.) On September 20, 2021, Plaintiff relayed the same to her manager, Suzanna Martz, who provided Plaintiff with a religious exemption form and reiterated that the vaccination deadline was October 1, 2021. (Id. ¶¶ 24-25.)

That same day, Plaintiff submitted an exemption form to Putnam, requesting that she be permitted to remain unvaccinated so long as she continued to wear a mask, socially distance, and submit herself to weekly testing. (Id. ¶¶ 26-27.) In the form, Plaintiff submitted that she was "exercising [her] right to receive a religious exemption for vaccination," noting that "as a faithful Christian," receiving the vaccine "would be a violation of [her] faith that opposes abortion on the duty to adhere to moral conscience." (Id. ¶ 29.) Plaintiff also noted that she has maintained such beliefs for 20 years. (Id. ¶ 30.)

---

[3] Plaintiff's Complaint makes various references to "Defendant" without specifying whether she means Defendant Putnam or Defendant Nuvance. (See, e.g., Compl. ¶¶ 1, 19, 22, 26-28, 38, 42-43.) For purposes of construing the Complaint, the Court presumes that "Defendant" refers to Plaintiff's immediate employer, Defendant Putnam.

Plaintiff subsequently spoke with Putnam's human resources ("HR") manager, who informed her that Nuvance would review and render a determination on her requested exemption. (Id. ¶¶ 31-32.) On September 27, 2021, the HR department contacted Plaintiff to inquire whether she planned to receive the vaccine, and Plaintiff responded "[n]o." (Id. ¶¶ 33-34.)

On October 1, 2021, the vaccination deadline lapsed, and Plaintiff's exemption form was still under review. (See id. ¶¶ 35, 37.) On October 3, 2021, Plaintiff was placed on administrative leave for failure to receive the vaccine by October 1, 2021. (Id. ¶ 36.) On October 4, 2021, Plaintiff received an email from the HR department, "denying her application for [a] religious exemption" and providing her until October 8, 2021 to come into compliance with the vaccine mandate or face termination. (Id. ¶¶ 37-38.)

On October 8, 2021, Plaintiff informed the HR department that she would not receive the COVID-19 vaccine. (Id. ¶ 40.) Plaintiff also reported to the HR department that she believed she "was being treated differently for submitting a religious accommodation request," and she asked Defendants to reconsider their denial of her application. (Id. ¶ 41.)

On October 15, 2021, Plaintiff received a letter summarizing her noncompliance with Defendants' policy and informing her that her termination would take effect on October 18, 2021. (Id. ¶ 44.)

Plaintiff took no further action, and she was terminated on October 18, 2021.  (Id. ¶ 45.)

**B.  The EEOC Charge**

On or about October 12, 2021, prior to her termination, Plaintiff filed claims against Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 7.) On June 16, 2022, Plaintiff's counsel received a notice containing step-by-step instructions to create an EEOC portal account and access Plaintiff's charge.  (Id., Ex. B ("EEOC Emails") at 3.) The instructions note that claimants should use the portal to "check the status of [their] charge."  (Id.)

On August 18, 2022, Plaintiff's counsel received the contact information of the EEOC investigator assigned to handle Plaintiff's charge.  (Id. at 2.)  Counsel contacted the investigator, requesting that he address Plaintiff's charge, and, on August 30, 2022, the EEOC investigator responded that he would process Plaintiff's request "right away."  (Id. at 1.)  The EEOC uploaded a notice of right to sue to the EEOC portal on September 24, 2022. (Compl. ¶ 8; id., Ex. A ("Notice of Right to Sue").)

Approximately four months later, on January 25, 2023, Plaintiff's counsel contacted the EEOC investigator to inquire about the status of Plaintiff's charge. (EEOC Emails at 1.)  On February 9, 2023, counsel also contacted an investigator unrelated

to this action to inquire about various other charges for which counsel was the named contact in the EEOC portal. (Id. at 11.) That investigator reconnected counsel with the EEOC investigator assigned to the instant action, and, on February 14, 2023, the EEOC investigator informed counsel that the EEOC had issued Plaintiff's Notice of Right to Sue on September 24, 2022. (Id. at 6-7.) The investigator also emailed counsel a courtesy copy of the Notice of Right to Sue. (Id.; Compl. ¶ 8.) Plaintiff filed the instant action on February 24, 2023.

## II. **Legal Standard**

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" where a plaintiff has failed to put forth "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The court may only consider facts alleged in the complaint or in documents attached to the complaint as an exhibit or incorporated therein by reference, matters of which judicial notice may be taken, or documents either in Plaintiff's possession or of which the Plaintiff had knowledge and relied on in bringing

suit.  See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

In the discrimination context, a "complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but "must at a minimum assert nonconclusory factual matter sufficient to 'nudge its claims across the line from conceivable to plausible' to proceed."  E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (citing Iqbal, 556 U.S. at 680).

## III. Discussion

Plaintiff alleges that Defendants discriminated and retaliated against her, on the basis of religion, in violation of Title VII and the NYSHRL.  (See generally Compl.)  Specifically, Counts I and III are claims for religious discrimination under Title VII and the NYSHRL, respectively.  Counts II and IV are claims for retaliation under Title VII and the NYSHRL, respectively.[4]  Defendants move to dismiss the Complaint, arguing that (1) the Title VII claims are untimely, and (2) Plaintiff has failed to allege plausible claims for discrimination and retaliation under Title VII and the NYSHRL.  For the following reasons, Plaintiff's claims are dismissed with prejudice.

---

[4] Although it is not clear from the face of the Complaint, based on Plaintiff's style of pleading, the Court construes Count IV as a claim for retaliation under the NYSHRL.

A.  **Timeliness**

Defendants first argue that Plaintiff's Title VII claims are untimely.  This Court agrees.

A claimant must file a claim under Title VII within 90 days of his or her receipt of a right-to-sue letter.  42 U.S.C. § 2000e-5(f)(1); Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 (1984) (per curiam).  Courts in this district strictly enforce the 90-day limitation period.  See Okoampa-Ahoofe v. Johnson & Higgins, No. 99 Civ. 5820 (AGS), 2000 WL 1471552, at *2 (S.D.N.Y. Sept. 29, 2000) (collecting cases).

The Court of Appeals has articulated that a notice of a right to sue is presumed to have been received by the plaintiff within "three days after its mailing."  Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525-26 (2d Cir. 1996); see also Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011).  Courts in this Circuit are therefore tasked with dismissing claims at the pleading stage based on that presumption.  To overcome the presumption, a claimant must "present[] sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail."  Tiberio, 664 F.3d at 37 (citation omitted).  It remains the claimant's burden to prove that the time limit should be extended.  Okoampa-Ahoofe, 2000 WL 1471552, at *3.

Moreover, courts in this district do not toll the statute of limitations for purported negligence of outside factors because, ultimately, "the responsibility for filing remains with plaintiff's attorney." Id. at *4; Speroni v. Nova Healthcare Adm'rs, 21-CV-1260JLS(F), 2022 WL 17178352, at *4 (W.D.N.Y. Sept. 27, 2022) (explaining that a "failure to monitor the progress of one's case for statute of limitations compliance" does not necessitate such extraordinary relief).

Here, the EEOC issued the Notice of Right to Sue to Plaintiff on September 24, 2022. (See Notice of Right to Sue.)  Although it is unclear whether the presumed 3-day mailing period would still apply where the claimant received notice via an online portal, even its application to these facts cannot save Plaintiff's Title VII claims.  To be considered timely, and even assuming the grace period applied, Plaintiff needed to have commenced the instant action no later than December 26, 2022 – 93 days after issuance of the EEOC's Notice of Right to Sue.  Plaintiff commenced the present action on February 24, 2023 – nearly two months after expiration of the limitations period.

In an attempt to resuscitate the Title VII claims, Plaintiff's counsel attributes the late filing to a technical glitch within the EEOC portal, and he attaches as "other admissible evidence" various email communications with members of the EEOC.  Plaintiff's counsel claims that he did not "have access" to the portal, which

he alleges prevented him from learning of the Notice of Right to
Sue until February of 2023.  (EEOC Emails at 10.)  Unfortunately,
the email communications belie counsel's contentions.  That is,
counsel clearly received instructions on June 16, 2022 detailing
how to sign up for and gain access to the EEOC portal.  (Id.
at 2-3.)  The instructions state that the portal permits parties
to "[c]heck the status of [their] charge."  (Id. at 3.)  Nowhere
in the instructions is there any suggestion that counsel should
have received notice through some other means.  Even so, had
counsel been truly concerned with the status of Plaintiff's charge,
he could have contacted the EEOC investigator directly via email.
Indeed, nearly five months passed between when the EEOC
investigator confirmed that he would process Plaintiff's charge
"right away" and when counsel contacted him again for a status
update.  (Id. at 1.)

　　　Plaintiff's counsel also draws on Ong v. Deloitte Consulting,
LLP, 21-cv-2644 (MKV), 2022 WL 4585335 (S.D.N.Y. Sept. 29, 2022),
as an example of where a plaintiff successfully rebutted the
mailing presumption through "other admissible evidence."  (Pl.'s
Br. at 9.)  But the facts of that case were markedly different
from those at issue here.  There, the plaintiff proffered evidence
showing that the EEOC had incorrectly dated its notice of right to
sue 20 days prior to the correct date of issuance.  Ong, 2022 WL

4585335, at *1-2.  There is no similar mistake or admission by the EEOC here.

Rather, these email communications show only counsel's failure to monitor the status of Plaintiff's charge, and Plaintiff therefore has not rebutted the mailing presumption.  See Okoampa-Ahoofe, 2000 WL 1471552, at *3 (explaining that "the responsibility for filing remains with plaintiff's attorney").  Accordingly, the Title VII claims are untimely and must be dismissed as the "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin, 466 U.S. at 152.

**B.  Jurisdiction over the NYSHRL Claims**

Given the Court's ruling on timeliness disposes of Plaintiff's Title VII claims, it dismisses the only federal claims in this action.  Still, federal courts may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ."  28 U.S.C. § 1367(a).  "A district court's decision whether to exercise . . . jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009).  In deciding whether to exercise supplemental jurisdiction over state law claims, courts

weigh "the values of judicial economy, convenience, fairness, and comity . . . ." See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

Until recently, courts in this Circuit treated discrimination and retaliation claims arising under Title VII and the NYSHRL as "analytically identical, applying the same standard of proof to both claims," and assessing them together. See Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 n.9 (2d Cir. 2008) (citations omitted); Fitzgibbons v. Cnty. of Tompkins, No. 3:21-CV-1019 (MAD/ML), 2023 WL 4467094, at *13 (N.D.N.Y. July 11, 2023) (discussing the standards applied to both discrimination and retaliation claims).

In 2019, however, the New York legislature amended the NYSHRL to establish that, as applied to claims accruing on or after the effective date of October 11, 2019, courts should construe liberally the provisions of the NYSHRL "regardless of whether federal civil rights law, including those laws with provisions worded comparably . . . have been so construed." Deveaux v. Skechers USA, Inc., No. 19CV9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020) (quoting Act of Aug. 12, 2019, sec. 6, § 300, 2019 N.Y. Sess. Laws 160 (codified as amended at N.Y. Exec. Law § 300)). Thus, although the claims remain analytically identical, plaintiffs alleging discrimination and retaliation claims now shoulder a lighter burden under the NYSHRL than under

Title VII.  See Shaughnessy v. Scotiabank, No. 22 CV 10870 (LAP), 2024 WL 1350083, at *10-11 (S.D.N.Y. Mar. 29, 2024) (observing the same for claims arising under the ADEA and NYSHRL).

Defendants argue that Plaintiff's Title VII and NYSHRL claims for discrimination and retaliation must also be dismissed on substantive grounds.  Although, in the usual case, the balance of factors would tilt toward dismissing the federal claims on procedural grounds and declining to exercise jurisdiction over the NYSHRL claims, in this particular case, Plaintiff has clearly failed to satisfy her burdens under Title VII and the NYSHRL. Consequently, considerations of judicial economy counsel in favor of exercising supplemental jurisdiction over the remaining NYSHRL claims and dismissing them along with the federal claims.

### C.   **Title VII and NYSHRL Claims**

As previewed above, Plaintiff's claims fail on substantive grounds.  First, though, some housekeeping is in order.  The Complaint makes vague, conclusory references to a "hostile work environment" and "disability." (Compl. ¶¶ 48, 56, 61.)  To the extent that Plaintiff intended to raise claims for discrimination based on hostile work environment or disability, she appears to have abandoned those theories entirely by failing to allege them in her Complaint.  Accordingly, only Plaintiff's claims for religious discrimination and retaliation are properly before the Court.

i.   Discrimination Claims

Plaintiff's first cause of action alleges discrimination based on religion under Title VII, and her third cause of action alleges the same under the NYSHRL.  Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  Title VII further imposes an affirmative obligation on an employer to accommodate an employee's religious observance, practice, or belief unless doing so would cause "undue hardship on the conduct of the employer's business."  Id. § 2000e(j).  The NYSHRL provides largely the same language.[5]

Defendants argue, in their moving and reply papers, that Plaintiff has not set forth a plausible claim for discrimination under a theory of disparate treatment or failure to accommodate.

_____

[5] New York Executive Law § 296(1)(a) provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual . . . ."   Additionally, section 296(10)(a) provides that "[i]t shall be an unlawful discriminatory practice for any employer . . . to impose upon a person as a condition of . . . retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business."

14

(Defs.' Br. at 11-15; Defs.' Reply at 4-8.)  Because Plaintiff asserts only a theory of failure to accommodate, (Pl.'s Opp. Br. at 4-7), the Court need not address whether she has made out a claim for disparate treatment.

To make out a prima facie claim of religious beliefs under Title VII, a plaintiff must demonstrate that (1) she has a bona fide religious belief that conflicted with an employment requirement, (2) she informed defendants of her beliefs, and (3) she was disciplined for failure to comply with the requirement. Moore v. Montefiore Med. Ctr., No. 22-cv-10242 (ER), 2023 WL 7280476, at *5 (S.D.N.Y. Nov. 3, 2023) (citing Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)).

Upon this showing, the burden shifts to the defendants to demonstrate that a reasonable accommodation would have imposed an undue burden on their business.  Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006); Moore, 2023 WL 7280476, at *6.  Undue hardship results where the "accommodation would result in substantial increased costs in relation to the conduct of [an employer's] particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023).

Here, Plaintiff has alleged sufficient facts to make out a prima facie case for religious discrimination under Title VII and the NYSHRL.  First, Plaintiff alleges that she is Christian and opposed to abortion.  (Compl. ¶¶ 18, 29.)  She alleges that because

aborted fetal cells were used to develop and test the COVID-19 vaccinations, she cannot, "according to the Church tenets on conscience," receive a vaccination derived from abortion.  (Id. ¶¶ 28-29.)  Second, Plaintiff alleges that she informed Defendants of her religious beliefs.  On September 20, 2021, Plaintiff spoke with her manager and submitted a religious accommodation request form, explaining her stance on abortion and basis for refusing the vaccine.  (Id. ¶¶ 24, 26, 28-30.)  Third, Plaintiff alleges that she was terminated for failing to comply with the COVID-19 vaccine mandate.  (Id. ¶¶ 44-45.)  Thus, drawing all reasonable inferences in favor of Plaintiff, the Court finds that she has made out a prima facie showing for religious discrimination under Title VII. Given Plaintiff has met the standard under Title VII, she has also met the more liberal standard under the NYSHRL.

The burden thus shifts to Defendants to demonstrate that they could not have accommodated Plaintiff's request without undue hardship.  See Knight, 275 F.3d at 167.  Here, Defendants correctly contend that Plaintiff's requested accommodation would have imposed an undue hardship on their business as a matter of law. (Defs.' Br. at 14; Defs.' Reply at 8.)  Plaintiff was a Patient Care Technician, (Compl. ¶ 16), which clearly falls within the definition of "personnel" under Section 2.61.  The sole accommodation Plaintiff sought was an exemption that would have permitted her to remain in the same role, unvaccinated, and to

wear a mask, socially distance, and submit herself to weekly testing. (Id. ¶ 27.) In other words, Plaintiff's requested accommodation would not have removed her from the scope of Section 2.61, and it would have subjected Defendants to legal liability. See D'Cunha v. Northwell Health Sys., No. 23-476-cv, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023) (summary order) (citations omitted); see, e.g., Algarin v. NYC Health + Hosps. Corp., 678 F. Supp. 3d 497, 510 (S.D.N.Y. 2023) (concluding that a weekly testing accommodation would still impose an undue burden as the plaintiff would have continued to work onsite).

Defendants therefore could not have granted Plaintiff's requested accommodation without violating the law. Moreover, Defendants would likely have suffered additional consequences, including harm to their accreditation, potential financial penalties, and a likelihood of malpractice suits or other litigation filed by patients who had suffered harm resulting from the violation. Defendants have therefore shown that granting the requested accommodation would have imposed an undue hardship on their business.

Furthermore, the law on this issue is well settled. Courts in this Circuit have repeatedly rejected discrimination claims that would require employers to violate Section 2.61 to accommodate a request for religious exemption or accommodation. See, e.g., D'Cunha, 2023 WL 7986441, at *2; Booth v. N.Y.

17

Presbyterian Hosp.-Behav. Health Ctr., No. 22-CV-10114 (NSR), 2024
WL 1381310, at *4 (S.D.N.Y. Mar. 29, 2024); St. Hillaire v.
Montefiore Med. Ctr., No. 23-CV-4763 (PMH), 2024 WL 167337, at *4
(S.D.N.Y. Jan. 16, 2024); Moore, 2023 WL 7280476, at *6; Algarin,
678 F. Supp. 3d at 509; Dennison v. Bon Secours Charity Health
Sys. Med. Grp., P.C., No. 22-CV-2929 (CS), 2023 WL 3467143, at *5-
6 (S.D.N.Y. May 15, 2023); Shahid-Ikhlas v. N.Y. & Presbyterian
Hosp., Inc., 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023); Riley
v. N.Y.C. Health and Hosps. Corp., No. 22-CV-2736(JGK), 2023 WL
2118073, at *4 (S.D.N.Y. Feb. 17, 2023); Marte v. Montefiore Med.
Ctr., No. 22-CV-03491-CM, 2022 WL 7059182, at *3-4 (S.D.N.Y.
Oct. 12, 2022); Marciano v. de Blasio, 589 F. Supp. 3d 423, 434-35
(S.D.N.Y. 2022).  The U.S. Supreme Court's recent holding in Groff
does not change this conclusion.  See D'Cunha, 2023 WL 7986441, at
*3 (concluding that violating a state mandate imposes "undue
hardship" under Groff because the "burden placed on an employer
from violating a state law . . . is both 'excessive' and
'unjustifiable'" (quoting Groff, 600 U.S. at 469)); see also
Dennison, 2023 WL 3467143, at *3 n.3 ("The outcome of [Groff] will
not affect the result . . . .").

Accordingly, Defendants have demonstrated that honoring
Plaintiff's requested accommodation would have constituted an
undue burden, and Plaintiff's claims for religious discrimination

must fail.   Counts I and III are therefore dismissed with prejudice.

### ii.  Retaliation Claims

Plaintiff's second and fourth causes of action allege unlawful retaliation under Title VII and the NYSHRL, respectively. Title VII prohibits employers from retaliating against any employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."   42 U.S.C. § 2000e-3(a).   Similarly, the NYSHRL forbids employers from retaliating against an employee because she "has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified[,] or assisted in any proceeding under this article."   N.Y. Exec. Law § 296(7).

To establish a prima facie case of retaliation under Title VII and the NYSHRL, a plaintiff must show that (1) she participated in protected activity; (2) the defendants were aware of the protected activity; (3) the defendants subjected her to an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.   See Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d Cir. 2015) (addressing the standard for retaliation claims under Title VII); Grimes v. N.Y. & Presbyterian Hosp., No. 1:23-CV-652 (MKV), 2024 WL 816208, at *9

(S.D.N.Y. Feb. 26, 2024).  At the motion to dismiss stage, however, a plaintiff need only plausibly allege that (1) the defendants discriminated or took an adverse employment action against her because (2) she opposed an unlawful employment practice.  Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015)).

Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff [engaged in protected activity], the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  Vega, 801 F.3d at 90 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013)).  "But-for" causation requires only that absent the retaliatory motive, the adverse action would not have occurred. Duplan v. City of N.Y., 888 F.3d 612, 625 (2d Cir. 2018) (quoting Vega, 801 F.3d at 90-91).  While the applicable standard of causation under the post-amendment NYSHRL remains an open question, the NYSHRL still requires a causal connection between the alleged protected activity and the alleged retaliatory conduct.  See Russo v. Wyandanch Union Free Sch. Dist., No. 23-716-cv, 2024 WL 2350314, at *2 n.3 (2d Cir. May 23, 2024) (summary order) (declining to reach the question of the applicable causation standard under the post-amendment NYSHRL because Plaintiff failed to show any causal connection); Nnebe v. City of

N.Y., No. 22CIV3860VECSLC, 2023 WL 9100339, at *15 (S.D.N.Y. Nov. 9, 2023), report and recommendation adopted, No. 22-CV-3860 (VEC), 2023 WL 8643801 (S.D.N.Y. Dec. 14, 2023) ("The Second Circuit has yet to hold explicitly that the but-for causation standard applies to claims under the NYSHRL, but has implicitly applied the but-for standard to NYSHRL claims on several occasions." (internal quotation marks omitted)).

Here, Plaintiff cannot plausibly allege causation under Title VII or the NYSHRL.  She alleges two acts of supposed protected activity: (1) her request for accommodation and (2) the October 8, 2021 statement to HR that she felt she was being treated differently due to her religious beliefs.  (Pl.'s Br. at 7.)  Yet "an employer's mere failure to make an accommodation subsequent to an employee's request simply gives rise to a failure to accommodate claim and 'cannot be bootstrapped into a viable . . . retaliation claim.'"  Robles v. Medisys Health Network, Inc., No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (quoting Missick v. City of N.Y., 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010)).  Thus, the alleged failure to accommodate claim cannot also be the basis for her retaliation claim.

Moreover, Plaintiff's own allegations demonstrate that the mandate applied to all employees and that the consequence for noncompliance was termination.  (See Compl. ¶¶ 22-23, 38.)  If, after submitting her form, Plaintiff had elected to receive the

vaccine, she would not have been terminated.  Alternatively, had she not submitted an exemption form but simply declined to receive the vaccine, she would have been terminated just the same.  There is therefore no causal link between her request for accommodation and the termination result.

There is also no causal link between Plaintiff's October 8, 2021 statement to HR and the termination result. Plaintiff alleges that she informed the HR department on October 8, 2021 that she believed she was being treated differently due to her religious beliefs.  (Id. ¶¶ 40-41.)  But Plaintiff was informed on October 4, 2021 that she would be terminated if she failed to receive the vaccine before October 8, 2021.  (Id. ¶¶ 37-38.)  Further still, the October 4, 2021 communication extended the original deadline of October 1, 2021 by seven days, affording Plaintiff additional time to come into compliance with the mandate instead of terminating her employment.  Plaintiff was even provided one final opportunity on October 15, 2021 either to come into compliance or be terminated as of October 18, 2021.  (Id. ¶ 44.)

Because Defendants announced their policy in August of 2021 and, specifically, made Plaintiff aware on October 4, 2021 of the likelihood of her termination, Plaintiff cannot plausibly allege that she was terminated because of her later-made statement.  Put

another way, the train was already in motion, and Plaintiff's stated perception did not change its course.

In sum, Plaintiff was not terminated because she engaged in any protected activity; she was terminated because she did not receive the COVID-19 vaccine.  Because Plaintiff cannot plausibly allege any semblance of causation, she cannot satisfy even the more lenient burden under the NYSHRL.  Counts II and IV are therefore dismissed with prejudice.

IV.  **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 8] is GRANTED, and Plaintiff's Complaint is dismissed with prejudice.  The Clerk of the Court is directed to mark the above-captioned case as closed and any open motions denied as moot.


**SO ORDERED.**

Dated:      June 11, 2024
            New York, New York

_Loretta A. Preska_
_____
LORETTA A. PRESKA
Senior United States District Judge